
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MARIE IRVING, AMY BONANO and THE NATIONAL FEDERATION OF THE BLIND, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW SAUL, Commissioner of the Social Security Administration, in his official capacity,[1]<br><br>Defendants. | Case No.: 17-CV-1730-KSC<br><br>**SETTLEMENT AGREEMENT AND STIPULATED ORDER OF DISMISSAL** |

Whereas, on August 28, 2017, Plaintiffs Lisa Irving, Amy Bonano, and the National Federation of the Blind ("Plaintiffs") filed the above-captioned lawsuit against Defendant Andrew Saul, in his official capacity as Commissioner of the Social Security Administration ("SSA" or "Defendant") alleging that SSA has violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, by denying blind individuals an equal opportunity to access its Visitor Intake Processing kiosks ("VIPr Kiosks");

Whereas, Defendant denies Plaintiffs' allegations and the issue of liability has not been litigated;

Whereas, based on SSA's fall 2018 usability testing results and SSA's Customer and Product Sessions, SSA has begun the process of making software, hardware, and furniture improvements designed to improve blind users' VIPr Kiosk check-in experience;

Whereas, SSA's design process for improving the VIPr Kiosks includes iterative usability testing with users from various populations and individuals from multiple modes of disability;

Whereas, SSA implemented a first round of software improvements in VIPr Kiosks across SSA field offices in fiscal year 2019, and SSA plans to continue to push additional incremental updates as necessary thereafter;

Whereas, SSA procured alternative VIPr Kiosk furniture designs from an engineering firm in fiscal year 2019, and continues to work with the firm on those designs; and

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

Whereas, Plaintiffs and Defendants (collectively, the "Parties") wish to further their shared goal of providing blind individuals an equal opportunity to access, participate in, and benefit from SSA's programs, services, and activities, and wish to resolve this litigation without further expense, delay, and risk;

The Parties hereby stipulate and agree as follows:

1. "VIPr System" and "VIPr Kiosk(s)" refer to the SSA's Visitor Intake Processing kiosks and includes the furniture, hardware, and software components of such kiosks.

2. "Blind" is used to describe all individuals who, under federal civil rights laws including Section 504, have a vision-related disability that requires alternative methods to access hard-copy standard print.

3. "Agreement" refers to this Settlement Agreement and Stipulated Order of Dismissal.

4. "Litigation" refers to *Irving v. Saul*, 17-cv-1730-BAS (S.D. Ca.).

5. "Effective Date" refers to the date on which this Agreement, after being "so-ordered" by the Court, is electronically filed by the Court on the CM/ECF system.

6. **Third-Party Kiosk Accessibility Expert**. SSA shall retain a mutually agreeable third-party kiosk accessibility expert ("Consultant") to analyze, evaluate, and prepare reports concerning the VIPr Kiosks' compliance with the requirements of this Agreement, as further outlined below. In performing its work pursuant to this Agreement, the Consultant shall consider the VIPr Kiosks' ease of use for a range of blind users of varying levels of technical proficiency.

7. **Improved VIPr System**. SSA shall develop and implement throughout its field offices an improved VIPr System that satisfies the following requirements:

   a. VIPr Kiosk furniture shall meet Section 508 accessibility standards;
   b. VIPr Kiosks shall have an accessible headphone jack and when headphones are connected to the Kiosks, audio shall come out only from the headphone jack and not from the Kiosks' external speakers;
   c. SSA shall provide courtesy headphones for the VIPr Kiosks upon request, notice of which shall be included in both the Braille and audio VIPr Kiosk instructions. SSA shall maintain the courtesy headphones in usable and working condition;
   d. VIPr Kiosks shall require no additional assistive technology (other than headphones) to operate;
   e. VIPr Kiosks shall include improved Braille instructions;
   f. VIPr Kiosk keypad layout shall be Section 508 compliant and shall be described in Braille and audio instructions as necessary;

    g. With the understanding that private information (*e.g.*, Social Security numbers) shall not be revealed, all information that appears visually on the VIPr Kiosk screens shall be made available nonvisually through audio output, except where information needs to be altered to enhance usability for blind users (*e.g.*, including, but not limited to, removing announcement of decorative logos from the audio output). Audio output shall be available in English and Spanish and, if SSA introduces additional language options on the VIPr Kiosks, SSA shall make those languages available in the audio output if they are available from Freedom Scientific (or SSA's provider of audio output at that time) or if there are other reasonable steps SSA could take to provide those languages through audio output;

    h. VIPr Kiosks shall have audio output volume that can be controlled by blind users;

    i. VIPr Kiosks shall have a responsive audio output interface (*e.g.*, audio may be interrupted when a selection is made, audio instructions may be repeated, and there is a way to mute the audio output);

    j. Color coding must not be the only means of conveying information, indicating an action, prompting a response, or distinguishing a visual element;

    k. VIPr Kiosks shall meet Section 508 standards regarding color contrast;

    l. VIPr Kiosks shall allow blind users to request extra time;

    m. VIPr Kiosks shall provide an equal opportunity for blind users per 45 C.F.R. Part 85, including 45 C.F.R. § 85.21, as evaluated by the Consultant, described below; and,

    n. SSA shall maintain the VIPr Kiosks at its field offices so that they continue to provide an equal opportunity for blind users per 45 C.F.R. Part 85, including 45 C.F.R. § 85.21.

8. **Process.** In working to meet the requirements described above in Paragraph 7, SSA shall employ the following process:

    a. SSA shall make best efforts to acquire a new numerical keypad for the VIPr Kiosks that uses the same layout as telephone or ATM-style keypads, without extraneous non-numerical keys. SSA shall explore whether sole source purchasing rules may be used to allow such acquisition. If SSA determines that it cannot purchase new keypads as specified here, SSA shall document the reasons for its conclusion and the efforts made to purchase new keypads, and provide this documentation to Plaintiffs.

    b. The Consultant shall evaluate the VIPr Kiosk for compliance with the requirements of Paragraph 7 of this Agreement. SSA shall provide the Consultant with the access it needs to the VIPr Kiosks for such evaluation. The Consultant shall issue a written report on the results of its evaluation to both Plaintiffs and Defendant.

    c. Within 90 days of the Effective Date and every 90 days thereafter for the term of this Agreement, SSA shall send Plaintiffs a written report summarizing the status of the VIPr Kiosks' redesign and the Consultant's work in assisting SSA during the relevant reporting period.

    d. SSA's compliance with the process described in this Paragraph will not excuse any failure to comply with Paragraph 7 above.

9. **Timing.**

   a. SSA shall hire the Consultant within 90 days of the Effective Date.
   b. The Consultant shall conduct an evaluation and issue the report required by Paragraph 8(b) on or before December 31, 2021.
   c. SSA shall implement the Improved VIPr System described in Paragraph 7 of this Agreement in SSA field offices on or before December 31, 2021.
   d. Unforeseen Circumstances: The timeframes included in this Paragraph memorialize the Parties' projected timetable for implementation of this Agreement. In the event an unforeseen circumstance occurs that causes SSA to fail to timely fulfill any requirement of this Agreement, SSA shall notify Plaintiffs' counsel in writing within thirty (30) days after SSA becomes aware of the unforeseen circumstance, its anticipated impact on SSA's ability to perform the term(s) of this Agreement, the measures taken to prevent or minimize the failure, and, as appropriate, a proposed new timeline for completion. In cases of unforeseen circumstances, the Parties agree to negotiate in good faith regarding modifying the timeframes set forth in this paragraph. If SSA requests to amend deadlines due to unforeseen circumstances, Plaintiffs shall not unreasonably withhold agreement to such requests.

10. **Additional Procedures and Policies.** SSA shall implement the following policies and procedures:

    a. SSA shall release a training before December 31, 2021, to inform all appropriate Operations staff and managers, meaning field office staff and managers, VIP Coordinators, and headquarters operational staff that support and manage the VIP system, about SSA's accessibility policy and how SSA's blind customers use the improved VIPr kiosk check-in system, and what accessible tools are available for such customers. The training shall include staff members' obligation to offer courtesy headphones to blind users of the VIPr Kiosks and shall reflect changes made to the VIPr Kiosks. SSA shall require all appropriate Operations staff and managers to review this training once annually for the term of this Agreement. Before October 31, 2021, SSA shall provide Plaintiffs with the draft training materials. Plaintiffs shall provide any feedback within 14 days of receiving the materials from Defendant and Defendant shall provide due consideration to incorporating Plaintiffs' feedback. Defendant shall share the final training materials with Plaintiffs.
    b. After implementation of the improved VIPr system described in Paragraph 7 ("the Improved VIPr System"), SSA will require its field offices to test all VIPr Kiosks twice per year for proper functioning for blind users, and request replacement equipment if non-operational or inaccessible. This testing will confirm, among other things, that (a) the Braille instruction sheet is posted and accessible, (b) the keypad is accessible and operational, (c) headphones are available upon request; and (d) for both the audio speakers and the headphone jack, the audio output is functional, the volume controls work as intended, and the audio is initiated properly. Defendants shall confirm to Plaintiffs that this testing has occurred, and

will share a summary of its compliance tracking, including a summary of testing results and any corrective measures taken, with Plaintiffs every 6 months after implementation of the Improved VIPr System through the term of this Agreement.

c. SSA management and staff will continue to track and monitor any accessibility issues with the VIPr System. Field office employees will report any issues using the agency's problem reporting methods and tools, currently the Change, Asset, and Problem Reporting System ("CAPRS"). After implementation of the Improved VIPr System, Defendant shall provide a summary of Improved VIPr kiosk accessibility-related issues related to blind users as well as corrective steps taken to address problems identified with Plaintiffs every 6 months after implementation of the Improved VIPr System through the term of this Agreement.

d. SSA will instruct its customers to report accessibility issues with the Improved VIPr System using the email address Section508@ssa.gov, which is also listed at https://www.ssa.gov/accessibility/508_overview.html. SSA shall provide this email address on the VIPr Kiosks in Braille. Defendant shall share a summary of accessibility complaints related to the Improved VIPr System, with any personal identifying information excluded, as well as any corrective steps taken to address problems identified, with Plaintiffs every 6 months after implementation of the Improved VIPr System through the term of this Agreement.

e. SSA shall use best efforts to cause all security guards in SSA field offices to be instructed that: (1) the Improved VIPr System is accessible to and can be used independently by blind customers; (2) they are to allow blind customers to use the kiosks independently; and (3) they should notify field office management if blind customers require assistance with the VIPr Kiosks and not attempt to provide such assistance themselves.

f. Within one year of the Effective Date, SSA and Plaintiffs shall meet in the Baltimore, Maryland area to discuss and work collaboratively to develop a plan for SSA to conduct outreach to the blind community with the goals of familiarizing blind users with the new VIPr Kiosk design, publicizing that the VIPr Kiosks can be operated privately and independently by blind customers, and informing blind customers of how they can report accessibility problems with the VIPr Kiosks, specifically through https://www.ssa.gov/accessibility/508_overview.html. This plan shall include conducting outreach efforts through communications or publications commonly accessed by the blind, as well as through SSA's attendance and participation at conferences, meetings, and other gatherings frequented by blind individuals and where SSA can offer demonstrations of the Kiosks. Unless agreed to otherwise at the Parties' initial meeting and confirmed in writing, SSA shall share with Plaintiffs a proposed outreach plan within 30 days following the initial meeting. Within 30 days of receiving the proposed outreach plan from SSA, Plaintiffs may offer SSA feedback on the plan or the Parties may agree to meet again to further develop the outreach plan. SSA shall give due consideration to Plaintiffs' feedback and notify Plaintiffs within 30 days of receiving the feedback of its response to the feedback, including any changes made to the outreach plan and reasons for rejecting any of Plaintiffs' feedback. Within 90 days of the deployment of the Improved VIPr System, SSA shall begin to implement its

outreach plan. SSA shall be responsible for all costs associated with implementing this outreach plan.

11. **Term of Agreement.** This Agreement shall remain in effect for a period of four years from the Effective Date. If, at the end of the four-year period, provisions of this Agreement remain unfulfilled, then the term of the Agreement shall be extended for an additional one-year term.

12. **Attorneys' Fees and Costs.** In full satisfaction of Plaintiffs' attorneys' fees and costs up through the Effective Date of this Agreement, Defendant shall ensure that the United States pays $332,969.50 to Plaintiffs within 60 days of the Effective Date. Upon receipt of this payment for attorneys' fees and costs, Plaintiffs shall release and forever discharge all claims against Defendant for attorneys' fees and costs accrued through the Effective Date.

13. **Reporting.** With respect to each item in this Agreement to be performed within a specified time period, Defendant shall report to Plaintiffs as to whether the item has been performed at the close of the specified time period.

14. **Notices.** Unless otherwise specified in this Agreement, any and all written notices or reports that are required and/or requested herein shall be effective when delivered by certified mail, overnight courier, e-mail, or other method of providing evidence of actual delivery to the respective party at the following addresses:

   For Plaintiffs:

   Jessica P. Weber
   Brown, Goldstein & Levy, LLP
   120 E. Baltimore Street, Suite 1700
   Baltimore, MD 21202
   Tel: (410) 962-1030
   Fax: (410) 385-0869
   Email: jweber@browngold.com

   For Defendant:

   Katherine L. Parker, Assistant U.S. Attorney
   Office of the U.S. Attorney
   880 Front Street, Room 6293
   San Diego, CA 92101
   Tel: (619) 546-7634
   Fax: (619) 546-7751
   Email: Katherine.parker@usdoj.gov

15. **Dismissal and Continuing Jurisdiction.** After signing this Agreement, the Parties shall jointly ask the Court to "so-order" the Agreement and retain jurisdiction to enforce the

Agreement. The Parties agree that the Court has the power to order specific performance of the Agreement. Upon signature of this Agreement by the Parties and the Court, this Litigation shall be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a).

16. **Release of Claims.** Plaintiffs and their heirs, administrators, successors, or assigns (collectively, "Releasors"), hereby release, waive, acquit, and forever discharge Defendant, along with Defendant's administrators, successors, officers, employees, and agents (together, the "Releasees") from, and are forever barred and precluded from prosecuting, any and all claims, causes of action, or requests for any monetary or injunctive relief (whether in administrative or in judicial proceedings), whether presently known or unknown, that have been or could have been asserted in the Litigation by reason of, with respect to, in connection with, or which arise out of, any matters alleged in the case that the Releasors, or any of them, have against the Releasees, or any of them. This subsection shall not be interpreted to in any way limit the ability of Plaintiffs, either collectively or individually, to prosecute any and all claims, causes of action, or requests for any monetary or injunctive relief (whether in administrative or in judicial proceedings) that may arise following the Effective Date of this Agreement, even if such future claims, causes of action, or requests which arise after the filing of the stipulation might raise claims of non-compliance with Section 504.

17. Each undersigned Party representative certifies that he or she is fully authorized to enter into the terms and conditions of this Agreement and to execute and legally bind the Party he or she represents.

18. This Agreement may be executed in several counterparts, with a separate signature page for each Party. All such counterparts and signature pages, together, will be deemed to be one document. The Parties further agree that this Agreement may be transmitted by facsimile or other electronic means and that the reproduction of signatures by facsimile or other electronic means will be binding as if originals.

19. The Parties acknowledge that they have read this Agreement, that they fully understand their rights, privileges, and duties under this Agreement, and that they enter into this Agreement freely and voluntarily. Further, the Parties acknowledge that they have had adequate time to consult with counsel of their choice to discuss the terms and consequences of this Agreement.

20. This Agreement and the provisions contained herein will not be construed or interpreted for or against any Party hereto because that Party drafted or caused a Party's legal representative to draft any of its provisions.

21. Should it be determined by a court that any term of this Agreement is unenforceable, that term will be deemed to be deleted. However, the validity of and the Parties' ability to enforce the remaining terms shall not be affected by the deletion of the unenforceable terms.

Date: February 13, 2020

COUNSEL FOR PLAINTIFFS

By _____

Jessica P. Weber
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
jweber@browngold.com

Autumn M. Elliott
Melinda R. Bird
Natasha Reyes
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Ave., Suite 290
Los Angeles, CA 90010-2512
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
Autumn.Elliott@disabilityrightsca.org
Natasha.Reyes@disabilityrightsca.org

Kaitlin Banner
Margaret Hart
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, DC 20036
Phone: (202) 319-1000
Fax: (202) 219-1010
kaitlin_banner@washlaw.org
margaret_hart@washlaw.org

Date: February 19, 2020

FOR THE SOCIAL SECURITY
ADMINISTRATION

By _____

Katherine L. Parker, Assistant U.S. Attorney
Michael A. Garabed, Assistant U.S. Attorney
Office of the U.S. Attorney

8

880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7634

SO ORDERED:

_____   Dated: 3/9/20
Honorable Karen M. Crawford
United States Magistrate Judge